UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

PAUL CAREY,                                                **COMPLAINT**

                     Plaintiff,                   **26 Civ.**

       - against –                                  **ECF Case**

NASSAU COUNTY; THE NASSAU                    **Jury Trial Demanded**
COUNTY POLICE DEPARTMENT (NCPD);
NCPD OFFICER DANIEL RANDAZZO; NCPD
OFFICER CHRISTOPHER LAMONICA; NCPD
DETECTIVE MATTHEW SUTCH; NCPD
LIEUTENANT DANIEL DELARGY; and JOHN
DOE OFFICERS #1-5,

                   Defendants.

------------------------------------------------------------------- X

Plaintiff, by his attorney, David Gray, Esq., of Brill Legal Group, P.C., for his Complaint against Defendants, alleges as follows:

### JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and pendent state law claims.

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3), as this action involves federal questions regarding the deprivation of Plaintiff's constitutional rights under color of state law.

3.      This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Nassau County, New York.

## JURY DEMAND

5. Plaintiff demands a trial by jury in this action on each and every one of their claims.

## PARTIES

6. Plaintiff Dr. Paul Carey is a resident of Massapequa, New York and is a citizen of the United States of America.

7. Defendant Nassau County is a municipal entity duly organized and existing under the laws of the State of New York. Nassau County operates the Nassau County Police Department ("NCPD"). Defendant Nassau County assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NCPD.

8. Defendant OFFICER DANIEL RANDAZZO ("RANDAZZO") is an officer employed by the NCPD and is sued in his individual and official capacities.

9. Defendant OFFICER CHRISTOPHER LAMONICA ("LAMONICA") is an officer employed by the NCPD and is sued in his individual and official capacities.

10. Defendant DETECTIVE MATTHEW SUTCH ("SUTCH") is a Detective employed by the NCPD and is sued in his individual and official capacities.

11. Defendant LIEUTENANT DANIEL DELARGY ("DELARGY") is a Lieutenant employed by the NCPD and is sued in his individual and official capacities.

12. Defendants John Doe Officers #1-5 are unidentified officers and/or employees of Nassau County who were involved in the unconstitutional acts alleged herein.

2

13.     At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NCPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NCPD at all relevant times, with the power and authority vested in them as officers, agents and employees of the NCPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NCPD.

## NOTICE OF CLAIM

14.     Plaintiff timely filed a Notice of Claim with the Office of the County Attorney of Nassau County, on July 8, 2025, setting forth the facts underlying Plaintiff's claims against Defendants, and received claim number 25T106382.

15.     The County of Nassau improperly denied the claim, erroneously claiming it had not been timely filed.

16.     This action has been commenced within three years of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

17.     On February 16, 2022, Dr. Carey, a federally licensed gunsmith and dentist, was at his home (and dental office) at 4 Riviera Drive East in Massapequa, New York, when he awoke from an afternoon nap in his upstairs bedroom to what he thought was the sound of an intruder.

18.     Concerned, he called out "Veronica, is that you?" to his sole on-site employee, Veronica Vasold, who had been working downstairs in his office. She did not immediately respond.

19.     Fearing for his safety, Dr. Carey went downstairs, locked the door to the residential part of the building and returned to the top of the helical staircase, while holding a break-action shotgun and attempting to assess the situation.

20.     Moments later, Dr. Carey heard Ms. Vasold say "Doc, it's me, I'm still here." Relieved, Dr. Carey opened the breech of the shotgun, to securely prevent an accidental discharge. Dr. Carey then attempted to defuse the tension, joking to Ms. Vasold "I could have shot you," before calmly telling her "stay as long as you need" to complete her work for the day. Dr. Carey then returned to the residential portion of the building to rest.

21.     Ms. Vasold then phoned Dr. Carey's wife, Darlene Carey. She informed Ms. Carey what had occurred - including hearing Dr. Carey opening his gun - and said that she had failed to answer Dr. Carey because she was on the phone with a patient.

22.     Ms. Carey advised Ms. Vasold "don't call 911. I'll be right there."

23.     However, Ms. Vasold left the premises and called 911.

24.     The result of her 911 call was a rapid and large military-style police response by the Nassau County Police Department (NCPD) to the home, including about two dozen members of the NCPD, 10-15 police cars, and a 19,000-pound SWAT BearCat armored vehicle. Dressed as soldiers in a war zone, the police demonstrated through their conduct that they were ready, willing, and able to commence an urban assault upon a single individual in his home based upon nothing more than a 911 call from an off-site witness.

4

25.     Ms. Carey arrived at the location shortly thereafter. After identifying herself, she clarified to the large contingent of militarily-equipped police that Dr. Carey was not a threat. She then phoned Dr. Carey from her parked car and persuaded him to leave his home.

26.     Dr. Carey exited the home unarmed, with his hands above his head, clad in his pajamas, while officers pointed loaded firearms at him. He was immediately arrested, handcuffed, and transported to the NCPD 7th Precinct.

27.     Members of the NCPD then attempted to obtain consent from Ms. Carey to enter and search the home. Ms. Carey did not provide consent.

28.     Despite the fact that the front door of the house was open, Dr. Carey was in custody, and no one else was in the home, the NCPD then violently forced their way through the front door with a battering ram, destroying it in the process. They then seized about twenty legal firearms, parts, and tools, plus 4,000 rounds of legally-possessed ammunition, from inside the house.

29.     NCPD Commissioner Patrick Ryder conducted a television press conference that evening, slandered Dr. Carey as "agitated" and "intoxicated," falsely described Dr. Carey's legal firearms as "ghost guns," and noted that Dr. Carey had a machine shop in his basement -- as if that were also, somehow, illegal.

30.     The next morning, Dr. Carey was charged with menacing and felony possession of unregistered firearms. He was arraigned and released on $100,000 bail.

31.     After returning to their home, Ms. Carey observed two individuals -- whom they later learned were members of the Nassau County Police Department -- remove a large wooden

crate containing a drill press, worth approximately $2,000, from their porch, along with a case of wine. This taking was without warning or permission.

32.     Dr. Carey retained counsel and spent the next two years attending court appearances. On April 14, 2023, May 15, 2023, and June 12, 2023, a *Mapp* hearing was held in Nassau County Court to challenge the legality of the search. Defendants testified incredibly. On December 11, 2023, Justice Robert A. Schwartz issued an order and decision granting Dr. Carey's motion to suppress the physical evidence seized from his house, determining that the People had failed to establish that the initial warrantless entry into the house was justified by an emergency, that the police had reasonably relied on apparent authority of Dr. Carey's wife to consent to a search of the house, or that her consent was given voluntarily.

33.     The Nassau County District Attorney's Office appealed the decision to the Supreme Court of the State of New York, Appellate Division, Second Department, which affirmed the order on April 2, 2025. On April 22, 2025, the Nassau County District Attorney's Office dismissed the underlying criminal case against Dr. Carey.

34.     Dr. Carey was traumatized by this encounter. He continues to experience anxiety and fear when he sees police or hears a siren, which triggers memories of the illegal police misconduct he suffered.

35.     The illegal search and seizure of Dr. Carey by the defendant police officers was in excess of their authority as NCPD officers, and without proper cause or legal justification.

36.     Defendants' conduct caused Dr. Carey to sustain psychological and emotional trauma.  Their actions constituted outrageous and reckless conduct, demonstrated a callous indifference to and willful disregard of Plaintiff's federal and state protected rights.

6

37.    Because he was forced to defend himself against a wholly unjustified set of preposterous criminal charges -- including an unsuccessful appeal by the Nassau County District Attorney -- Dr. Carey spent approximately $100,000 on legal fees to secure his liberty.

38.    Dr. Carey's seized firearms and ammunition were worth approximately $200,000.

39.    As a result of this incident, due to the damage it caused his reputation, Dr. Carey lost approximately $1,500,000 worth of revenue to his dental practice (approximately $500,000 per year).

40.    Dr. Carey spent approximately $20,000 to reduce the public account of his arrest on the internet.

41.    Dr. Carey spent approximately $30,000 to replace the front door of his home.

**FIRST CLAIM FOR RELIEF**
**Violation of Paul Carey's Fourth Amendment and Fourteenth Amendment Rights: false arrest and imprisonment**

42.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43.    The individual Defendants, including Randazzo, LaMonica, Sutch, and Delargy, and the John Doe defendants, who were acting in concert and within the scope of their authority, arrested and caused plaintiff PAUL CAREY to be imprisoned without probable cause in violation of his right to be free of an unreasonable seizure under the Fourth Amendment to the Constitution of the United States, and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

44.    Plaintiff PAUL CAREY suffered injury as a result of defendants' conduct.

## SECOND CLAIM FOR RELIEF
### Violation of Paul Carey's Fourth Amendment Rights: excessive use of force

45.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

46.    The use of excessive force by the individual Defendants, including Randazzo, LaMonica, Sutch, and Delargy, and the John Doe defendants, acting in concert, using war-fighting tactics and weaponry, and in destroying the front door of plaintiff Dr. Paul Carey 's home and entering and searching it without a warrant, was an objectively unreasonable excessive use of force in violation of his rights under the Fourth Amendment to the Constitution of the United States.

47.    Plaintiff Dr. Paul Carey suffered injuries as a result of defendant and John Does' conduct.

## THIRD CLAIM FOR RELIEF
### False Arrest and False Imprisonment of Paul Carey

48.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

49.    The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York.  Defendants intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement. Moreover, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

8

50.     Defendants were at all relevant times agents, servants, and employees acting within the scope of their employment by the County of Nassau and the NCPD, which are therefore responsible for their conduct.

51.     Plaintiff PAUL CAREY suffered injuries as a result of defendants' conduct.

52.     Pursuant to 28 U.S.C. § 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

**FOURTH CLAIM FOR RELIEF**
**Malicious Prosecution of Paul Carey**

53.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the Constitution of the United States.  Defendants commenced and continued a criminal proceeding against plaintiff Dr. Paul Carey.  Defendants acted with actual malice in commencing and continuing the proceeding (reflected in the defamatory and slanderous NCPD press conference and the meritless appeal), and there was an absence of probable cause for the criminal proceeding.  Furthermore, the criminal proceeding was terminated favorably to plaintiff Dr. Paul Carey

55.     Plaintiff suffered injury as a result of defendants' conduct.

56.     Pursuant to 28 U.S.C. § 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.  Pursuant to the Fourth Amendment of the United States Constitution, this Court has jurisdiction to hear the federally based claim.

## FIFTH CLAIM FOR RELIEF
### Negligent Hiring, Retention, Training and Supervision

57. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

58. Defendant Nassau County and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise Defendants, individuals who were unfit for the performance of police duties on February 16, 2022 at the aforementioned location.

59. Plaintiff Dr. Paul Carey suffered injuries as a result of the conduct of defendant Nassau County.

60. Pursuant to 28 U.S.C. § 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## SIXTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

61. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62. Defendants' unlawful conduct was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

63. Defendants' conduct was intended to and did cause severe emotional distress to Plaintiff Dr. Paul Carey.

64. The conduct of the defendant police officers was the direct and proximate cause of injury and damage to Plaintiff Dr. Paul Carey and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

10

65. As a result of the foregoing, Plaintiff Dr. Paul Carey was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damages and injured.

66. Pursuant to 28 U.S.C. § 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## SEVENTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress

67. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68. Defendants' conduct, in assaulting and battering Plaintiff Dr. Paul Carey, was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff Dr. Paul Carey.

69. The acts and conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiff Dr. Paul Carey and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70. As a result of the foregoing, plaintiff Dr. Paul Carey was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

71. Pursuant to 28 U.S.C. § 1367, this Court has pendent or supplemental jurisdiction to hear and adjudicate such claims.

## EIGHTH CLAIM FOR RELIEF
### Municipal Liability Under 42 U.S.C. § 1983 (Monell)

72.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Defendant Nassau County is a "person" within the meaning of 42 U.S.C. § 1983 and is liable for the constitutional violations described herein. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny, a municipality is liable under § 1983 when a constitutional deprivation is caused by an official policy, custom, or practice of the municipality, or by a decision of an official with final policymaking authority.

74.     NCPD Commissioner Patrick Ryder is the final policymaker for Nassau County with respect to law enforcement policy, training, supervision, and discipline. Commissioner Ryder's decisions and directives constitute official policy of Nassau County for purposes of § 1983 liability. Commissioner Ryder's conduct on February 16, 2022 — including his personal participation in and ratification of the unlawful arrest, search, and seizure of Dr. Carey, and his public defamation of Dr. Carey at a televised press conference — constitutes an official act of Nassau County.

75.     Nassau County maintained, and the NCPD operated under, de facto policies, customs, and practices that caused the constitutional violations suffered by Dr. Carey, including but not limited to: (a) conducting warrantless entries and searches of private homes without lawful justification or valid consent; (b) deploying disproportionate and militarized force — including armored vehicles and SWAT-level resources — in response to non-violent, non-

12

exigent situations; (c) arresting individuals without probable cause; and (d) seizing and retaining lawfully-owned property without legal authority.

76.    Nassau County failed to adequately train its officers with respect to the constitutional requirements governing warrantless entry into and search of a private home, the standard for probable cause to arrest, the scope of permissible property seizure, and the proportionate use of force. This failure to train reflects a deliberate indifference to the constitutional rights of Nassau County residents and was a moving force behind the violations suffered by Dr. Carey. See City of Canton v. Harris, 489 U.S. 378 (1989).

77.    Nassau County further failed to adequately supervise and discipline the individual defendant officers following their unconstitutional conduct on February 16, 2022. Commissioner Ryder's decision to publicly hold a press conference praising the NCPD's response — while simultaneously defaming Dr. Carey — constituted an explicit ratification of the officers' unconstitutional acts. The County's subsequent decision to appeal the suppression order through the Appellate Division, rather than acknowledge the constitutional violations, further demonstrates its ratification of and deliberate indifference to those violations.

78.    The unconstitutional policies, customs, practices, and failures described herein were the moving force behind the deprivation of Dr. Carey's Fourth and Fourteenth Amendment rights, and directly and proximately caused the injuries and damages he suffered, including his unlawful arrest and imprisonment, the unlawful search and seizure of his home and property, psychological trauma, reputational harm, and financial losses exceeding $1,850,000.

13

## PUNITIVE DAMAGES AGAINST ALL INDIVIDUAL DEFENDANTS ARE WARRANTED AND APPROPRIATE

79.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80.    The acts of the individual Defendants were willful, wanton, malicious and oppressive, and were motivated solely by a desire to harm Plaintiff, without regard for Plaintiff' well-being, and were based on a lack of concern and ill-will towards Plaintiff.

81.    As such, Plaintiff seeks punitive damages as to all defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Paul Carey prays for relief as follows:

a.    That the jury find and the Court adjudge and decree that plaintiff Dr. Paul Carey shall recover compensatory damages in an amount to be determined at trial against the individual defendants and the County of Nassau, jointly and severally, together with interests and costs, and punitive damages in an amount to be determined at trial against the individual defendants, jointly and severally;

b.    That the plaintiff recovers the cost of this suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

c.    That the plaintiff has such other and further relief as the Court shall deem just and proper.


Dated:        April 2, 2026
              New York, New York

14

**BRILL LEGAL GROUP, P.C.**
*ATTORNEYS FOR PLAINTIFF*


By: _____/s/_____ _ __

    **David Gray**
    176 Lexington Avenue, Suite O
    New York, NY 10016
    (212) 233-4141